UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUCUL ADVERTISING, LLC, a
Michigan limited liability company,

       Plaintiff,

                                                  File No.  1:11-CV-682

v.

                                                  HON. ROBERT HOLMES BELL

CHARTER TOWNSHIP OF GAINES,
a Michigan municipal corporation,

       Defendant.
_____/

## **O P I N I O N**

This action challenging a township's denial of a billboard application is before the Court on the parties' cross-motions for summary judgment on Plaintiff's constitutional claims. (Dkt. Nos. 26, 28.) For the reasons that follow, Defendant's motion will be granted and Plaintiff's motion will be denied.

### I.

Plaintiff Hucul Advertising, LLC, engages in outdoor commercial advertising. (Dkt. No. 1, Ex. 1B, Compl. ¶ 3.) On February 4, 2011, Plaintiff filed an application to install a digital billboard on property located at 4500 60th Street SE in Defendant Gaines Charter Township in Kent County, Michigan (the "Property"). At the time Plaintiff filed its application, the Gaines Charter Township Zoning Ordinance ("Ordinance") provided that "[b]illboards are allowed on parcels adjacent to M-6 and which are also located in the I-1 and

I-2 zoning districts," subject to the regulations contained in § 17.12(A) - (O). (Dkt. No. 13, Def. Br., Ex. A, Ord. § 17.12).[1]  It further provided that "[n]o digital billboard shall be located within 4,000 feet of another digital billboard abutting or visible from either side of M-6." (*Id.*)

The Gaines Township Planning Director determined that the Property was not eligible for a billboard because it was not adjacent to the M-6 right-of-way and because the proposed billboard would be located within 4,000 feet of an eligible digital billboard. (ZBA 7.)[2] Plaintiff appealed the Planning Director's interpretation of the Ordinance's adjacency to M-6 and digital billboard spacing requirements to the Gaines Township Zoning Board of Appeals ("ZBA"), and, in the alternative, requested variances from the Ordinance's adjacency to M-6 and digital billboard spacing requirements. On May 11, 2011, the ZBA denied all four grounds for relief. (ZBA 57-69.)

Plaintiff filed this eight-count action in the Kent County Circuit Court. Defendant removed the action to this Court. The parties have now filed cross-motions for summary

---

[1]Chapter 17 of the Ordinance was subsequently amended effective April 26, 2011, to provide: "Billboards are only permitted within 100 feet of the M-6 freeway on property in the I-1 and I-2 zoning districts. The lot on which the billboard is located must abut and have frontage on the M-6 right-of-way." (Dkt. No. 27, Def.'s Ex. C, Ord. § 17.12(A).)

[2]The parties have filed a stipulated record of the Zoning Board of Appeals ("ZBA") decision regarding Plaintiff's billboard application. (Dkt. No. 13, Stipulated R.) The record will be referenced as "ZBA" followed by a page number from 1 to 133.

judgment on the constitutional claims raised in Counts 4, 5, and 6 of Plaintiff's complaint.[3]

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendant carries its burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see*

---

[3] Counts I, II, III, and VII have been dismissed on stipulation of the parties. (Dkt. Nos. 20, 27.) Count VIII, which is an appeal from the ZBA's denial of Plaintiff's appeals and variance requests, was resolved in favor of Defendant. (Dkt. No. 48.)

*generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## III.

Plaintiff has alleged a substantive due process violation (Count IV), deprivation of civil rights (Count V), and an equal protection violation (Count VI). Plaintiff explains that its civil rights claim contains the "under color of state law" allegations for purposes of 42 U.S.C. § 1983, and is derivative of its substantive due process claim. (Dkt. No. 28, Pl.'s Mot. ¶ 8.) Accordingly, there are only two constitutional claims: substantive due process and equal protection. The parties have filed cross-motions for summary judgment on these claims.

**A. Substantive Due Process/First Amendment**

Although Count IV is entitled "Substantive Due Process Violation," Plaintiff's allegations are framed in terms of a First Amendment violation. Plaintiff alleges that the Ordinance's adjacency to M-6 and digital billboard spacing requirements on their face, and/or as applied, violate the First Amendment of the United States Constitution. Plaintiff contends that they are unreasonable time, place and manner restrictions and/or do not reasonably advance a substantial governmental interest, or do so in an unreasonable manner. (Compl. ¶¶ 69-71.)

It is well settled that "[w]here a particular Amendment provides an explicit textual source of constitutional protection' against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide

4

for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotations omitted); *see also Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (holding that substantive due process claim was duplicative of First Amendment claim). Because Plaintiff's complaint concerns limits on outdoor commercial advertising, which is constitutionally protected commercial speech, and because the First Amendment provides an explicit textual source of constitutional protection against limits on speech, the Court will analyze Plaintiff's allegations in Count 4 under the First Amendment rather than under substantive due process.[4]

There is no dispute that billboards involve speech that is protected by the First Amendment. *Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814, 818 (6th Cir. 2005) ("Billboards and other visual signs, it is clear, represent a medium of expression that the Free Speech Clause has long protected."). However, billboards "pose distinctive problems" that are subject to a municipality's "police powers" because billboards "take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." *Id.* (quoting *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994)). Time, place, and manner restrictions on speech are valid provided:

> (1) that they are justified without reference to the content of the regulated speech, (2) that they are narrowly tailored (3) to serve a significant

---

[4] This is consistent with Plaintiff's brief in support of its own motion for summary judgment which argues the viability of Count IV under First Amendment standards. (Dkt. No. 29, Pl. Br. 7-14.)

>  governmental interest, and (4) that they leave open ample alternative channels for communication of the information.

*Prime Media*, 398 F.3d at 818 (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). The narrow tailoring test is a form of intermediate scrutiny. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994) ("[R]egulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny. . . .").

Plaintiff contends that the Court should apply the four-part intermediate scrutiny test that is applied to restrictions on commercial speech. *See Pagan v. Fruchey*, 492 F.3d 766, 770 (6th Cir. 2007) (en banc) (citing *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)). The *Central Hudson* test bears a strong resemblance to the time, place, and manner test. Under the *Central Hudson* test, the Court considers the following factors:

 1. whether commercial speech concerns lawful activities and is not misleading,
 2. whether the government has asserted a substantial interest in support of its regulation
 3. whether the restriction on commercial speech directly and materially advances that interest, and
 4. whether the regulation is narrowly drawn.

*See Pagan*, 492 F.3d at 770-71.

Although Plaintiff intends to use the billboards for commercial speech, the Gaines Township sign Ordinance does not differentiate between commercial and non-commercial speech, and Plaintiff's billboard application was denied without reference to the use of the

billboards for commercial advertising. Accordingly, the Court will analyze the constitutionality of the Ordinance under the narrow tailoring test applied to time, place and manner restrictions, rather than under the *Central Hudson* test. *See Naser Jewelers, Inc. v. City of Concord, N.H.*, 513 F.3d 27, 33 (1st Cir. 2008) (applying the narrow tailoring test rather than the *Central Hudson* test to content-neutral regulations even though the targeted speech was primarily commercial).

The first question under the narrow tailoring test is whether the regulation is content neutral. To determine content neutrality in time, place, or manner cases, the principal inquiry is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). On its face, the adjacency to M-6 requirement is content neutral. So is the requirement concerning the spacing of digital billboards. "If a regulation is content-neutral on its face and states its purposes, we look to the legislative body's statement of intent." *Naser Jewelers*, 513 F.3d at 34. The purpose of the signage regulations is outlined in the Gaines Township Ordinance:

> This chapter is intended to regulate the type, number, physical dimensions, erection, placement and maintenance of signs in Gaines Charter Township. Its purpose is to:
> A.    Promote the public peace, health, and safety of residents and visitors;
> B.    Eliminate distractions that are hazardous to motorists and pedestrians;
> C.    Protect the public's ability to identify establishments and premises;
> D.    Protect the natural beauty and distinctive character of Gaines Charter Township;
> E.    Protect commercial, business, office and industrial districts and areas from visual chaos and clutter;
> F.    Provide an environment that fosters the reasonable growth and development of business and commerce;
> G.    Protect and enhance property values; and,

> H. Balance the individual rights of property owners to communicate their message with the public's right to be free of unreasonable distractions and aesthetic intrusions.

(ZBA 73, Ord. § 17.1.) The regulations are justified on the basis of traffic safety and aesthetics, without reference to the content of the regulated speech.

The Court turns to consideration of whether the regulations serve a significant governmental interest. Traffic safety and community aesthetics have long been recognized to constitute significant governmental interests. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981) (plurality opinion) (concluding that there can be no "substantial doubt that the twin goals that the ordinance seeks to further – traffic safety and the appearance of the city – are substantial governmental goals"); *Prime Media*, 398 F.3d at 819 (holding that city's sign regulations advanced "legitimate governmental interests" in aesthetics and traffic safety); *Naser*, 513 F.3d at 34 (concluding that sign regulation's stated goals of promoting traffic safety and community aesthetics "plainly constitute significant governmental interests"). Plaintiff has conceded that the Township has a right to implement reasonable regulations as to signs based on safety and aesthetics. (Dkt. No. 29, Pl. Br. 11.)

Plaintiff contends, however, that the regulations do not directly advance the intended governmental interest. In support of this assertion, Plaintiff notes that the Township previously approved three billboards on property that does not abut the M-6 freeway. Plaintiff further notes that these three billboards are 475, 250, and 155 feet from the M-6 right-of-way, while Plaintiff's proposed billboard would only be 100 feet from the M-6 right-of-way. Plaintiff contends that the Township has undercut its proffered goals by allowing

8

signs that are not adjacent to M-6 and that are at a greater distance from the M-6 right-of-way.

The Township has presented evidence that the three referenced billboards are on property that abuts property owned by the Michigan Department of Transportation ("MDOT"). These billboards were approved under a previous Ordinance, and pursuant to the Township's historical practice of "treat[ing] this MDOT-owned property as being part of the M-6 right-of-way, to be used for future expansions of the freeway or interchange/bridge areas." (ZBA 61.)

The fact that the Township at one point in time had a differently-worded ordinance, or that it interpreted a term in the former ordinance in a particular manner, does not undercut the legitimacy of its stated goal of including an adjacency requirement to further its legitimate interests in traffic safety and aesthetics. Courts are inclined to accept a municipality's efforts at self-correction as long as they are genuine. *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 982 (6th Cir. 2012). Because Defendant's adoption of amendments to its ordinance appear to be genuine, Defendant's practice under the previous Ordinance is moot. *See id*. at 981.

Moreover, even if the Township continues its practice of treating MDOT property that abuts M-6 as part of the M-6 right of way, that practice does not undermine the Township's rationale for the adjacency requirement. A content-neutral regulation may advance legitimate interests even if it does not completely achieve those interests. *Prime Media*, 398 F.3d at 821. All that is required is a reasonable fit, not a perfect fit. *Id*. at 821-22; *see also Lorillard*

9

*Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001) ("[T]he case law requires a reasonable 'fit between the legislature's ends and the means chosen to accomplish those ends.'"). The Township's decision to treat MDOT property that was set aside for interchanges and bridges like the M-6 right-of-way rather than like private property is not unreasonable.

Plaintiff contends that the 4,000-foot requirement improperly singles out digital billboards for extra regulation. Plaintiff notes that the Michigan Court of Appeals has held that an ordinance differentiating readily changeable billboards from static billboards was not narrowly tailored to advance a legitimate governmental interest. *See Outdoor Systems, Inc. v. City of Clawson*, 262 Mich. App. 716, 724 (2004) ("Whether a sign is readily changeable or not, it presents the same sort of traffic distraction or aesthetic problem.").

*Clawson* is distinguishable from this case because it involved a total prohibition on readily changeable signage, regardless of size. *Id.* at 821. Moreover, to the extent *Clawson* suggests that a municipality cannot draw distinctions between digital and static billboards, the Court disagrees with the case and declines to follow it. It is not unreasonable for municipalities to draw distinctions between digital and static billboards because their increased visibility and changing display have a greater effect on safety and aesthetics. Plaintiff acknowledged that digital billboards are visible from a greater distance. (Dkt. No. 27, Ex. C, Hucul Dep. 24.) Plaintiff's sales consulting expert acknowledged that the changing message on digital billboards is more effective at drawing the viewer's attention. (Dkt. No. 27, Ex. E, Hyde Dep. 19.)

Plaintiff also contends that the 4,000-foot spacing requirement for digital billboards

is not narrowly tailored as evidenced by the fact that the Michigan Highway Advertising Act ("MHAA"), Mich. Comp. Laws §§ 252.301-.323, allows digital billboards within 1,000 feet of each other.

The MHAA's 1,000-foot spacing requirement is a minimum spacing requirement rather than a mandatory or maximum spacing requirement. *See* Mich. Comp. Laws § 252.317 (providing that a sign structure "shall not be erected closer than 1,000 feet to another sign structure on the same side of the highway"); *see also Twp. of Homer v. Billboards By Johnson, Inc.*, 268 Mich. App. 500, 504 (2005) (holding that the MHAA Act "sets forth minimum requirements that a township cannot fall below, but that a township is free to exceed. Thus, the township may enact ordinances that are more restrictive than required by the HAA."). The MHAA does not prevent the Township from requiring a greater spacing requirement.

To be "narrowly tailored," a regulation does not need to be the "least restrictive" means of achieving the government's legitimate content-neutral interests. *Prime Media*, 398 F.3d at 819.

> [T]he requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. To be sure, this standard does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests. Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.

*Id.* (quoting *Ward*, 491 U.S. at 799). "The validity of time, place, or manner regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most

appropriate method for promoting significant government interests or the degree to which those interests should be promoted." *Id.* at 820 (quoting *Ward*, 491 U.S. at 800).

Plaintiff also objects that the Ordinance offers no justification for its 4,000-foot spacing requirement. A similar demand for an explanation was rejected in *Prime Media* in the context of a discussion on regulations restricting the size of billboards:

> To ask the City to justify a size restriction of 120 square feet over, say, 200 square feet or 300 square feet would impose great costs on local governments and at any rate would do little to improve our ability to review the law – because any further explanation assuredly would contain the kind of aesthetic and subjective judgment that judges are not well-equipped to second guess.

*Prime Media*, 398 F.3d at 823-24. The Township's choice of a particular spacing requirement is not invalid simply because the Plaintiff or the Court might consider a smaller spacing requirement sufficient. "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative. *Id.* at 819-20; *see also Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 105 (2d Cir. 2010) ("The City's rejection of an alternative model does not invalidate the regime selected by the City."); *Twp. of Blair v. Grand Lamar OCI North Corp.*, No. 296661, 2011 WL 5108510 (Mich. App. Oct. 27, 2011) (holding that a 2,640-foot billboard spacing requirement was constitutionally valid).

Finally, the Court is satisfied that the Gaines Township regulations leave open ample alternative channels for communication of the information. They permit billboards that meet the adjacency and spacing requirements, and they do not affect Plaintiff's freedom to

12

exercise the right to speak through other modes of communication. *See Prime Media*, 398 F.3d at 819 (holding that billboard size and height regulations left open ample alternative communication).

The Court concludes Township's adjacency to M-6 and digital billboard spacing requirements are content neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication of the information. Because the regulations are valid time, place, and manner restrictions, they do not violate Plaintiff's First Amendment right to free speech.

**B. Equal Protection**

Plaintiff's equal protection claim is based on its contention that Defendant has discriminated by creating two classes of property "adjacent" to M-6 and has treated those properties differently. Plaintiff contends that the Township has treated it differently from the three billboard owners who were allowed to place signs on parcels not adjacent to M-6, simply because the intervening property was owned by the MDOT rather than by a private party.

Plaintiff's equal protection claim is moot.[5] "Under Michigan law, a landowner does

---

[5] Defendant also contends that Plaintiff lacks standing to challenge the adjacency requirement on equal protection grounds because Plaintiff's injury will not be redressed by a favorable decision on the equal protection claim in light of Plaintiff's violation of the 4,000-foot spacing requirement. *See In Midwest Media Property, L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456 (6th Cir. 2007) (discussing redressability requirement); *Covenant Media of S. Car. v. City of N. Charleston*, 493 F.3d 421, 430 (4th Cir. 2007) (holding that the plaintiff did not have standing to challenge other billboard regulations in light of its violation
(continued...)

not possess a vested property interest in a particular zoning classification unless the landowner holds a valid building permit and has completed substantial construction." *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992) (citing cases). After the Township denied Plaintiff's billboard application, the Township amended the Ordinance. The revised ordinance clarifies the adjacency standard. The lot on which the billboard is located must abut and have frontage on the M-6 right-of-way. Plaintiff does not contend that its Property meets the requirements of the amended ordinance. Plaintiff acknowledges that there is an intervening property owned by a private party that lies between Plaintiff's Property and M-6. *See Bench Billboard*, 675 F.3d at 981 (holding that claims for injunctive and declaratory relief were mooted by the enactment of a new ordinance). Because Plaintiff's proposed billboard does not comply with the current ordinance, Plaintiff's equal protection claim is moot.

In addition, even if Plaintiff's Equal Protection claim is not moot, it nevertheless fails on the merits. "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Bench Billboard*, 675 F.3d at 986 (quoting *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788

---

[5](...continued)
of the billboard spacing requirement). While Defendant's argument may have merit with respect to Plaintiff's application for a digital billboard, Plaintiff also submitted an application for a static billboard that would not have been subject to the 4,000-foot spacing requirement. (Compl. ¶¶ 10-13, & Ex. 2.)

(6th Cir.2005)). The Supreme Court only applies heightened scrutiny to equal protection claims alleging that the government has infringed on a class of people's fundamental rights or targets a member of a suspect class. *Id.* at 986 (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)). Plaintiff is not a member of a suspect class, and although Plaintiff claims its First Amendment rights are at issue, Plaintiff alleges that only it was deprived of those rights. Plaintiff is accordingly proceeding on a "class of one" theory.

To proceed on a "class of one" theory, Plaintiff must demonstrate that the challenged action treats similarly situated people differently and lacks a rational basis for doing so. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Under rational basis scrutiny, the plaintiff has the burden to overcome the presumption of rationality. *Warren v. City of Athens*, 411 F.3d 697, 710-11 (6th Cir. 2005). The plaintiff must show that the adverse action is "so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) (quoting *Warren v. City of Athens*, 411 F.3d 697, 710-11 (6th Cir. 2005)). "This showing is made either by negativing every conceivable reason for the government's actions or by demonstrating that the actions were motivated by animus or ill-will." *Id.* The Township has no obligation to produce evidence to sustain the rationality of its action; "its choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *TriHealth, Inc. v. Board of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 790 (6th Cir. 2005) (quoting

15

*F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).

Plaintiff has produced no evidence that the Township acted with animus or ill-will. Plaintiff's contention is that there was no rational basis for treating MDOT property as M-6 property, or for distinguishing between property that abuts private property and property that abuts MDOT property.

The Township explained its differing treatment in two ways. First, it noted that it had historically treated MDOT-owned property as being part of the M-6 right-of-way because the property was to be used for further expansions of the freeway or interchange/bridge areas. (ZBA 61.) Second, the three billboards were approved under a prior version of the ordinance that required the "billboard" to be "adjacent to State of Michigan Trunk line." The Township explained that because a billboard is a structure rather than a parcel of property, it cannot itself have frontage on a road, so the definition of adjacent under the previous ordinance language could reasonably mean "close to" rather than "abutting." (*Id.*) On this record, the Court cannot find that the Township's actions were irrational.

## IV.

For the reasons stated, the Court will grant the Township's motion for summary judgment and deny Plaintiff's motion for summary judgment.

An order consistent with this opinion will be entered.

Dated: September 14, 2012         /s/ Robert Holmes Bell
                                  ROBERT HOLMES BELL
                                  UNITED STATES DISTRICT JUDGE